IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE CONNER,                          :

    Plaintiff,                       :

vs.                                     :   CIVIL ACTION 07-00063-WS-B

GROVER SMITH, *et al.,*                 :

    Defendants.                      :

## REPORT AND RECOMMENDATION

Plaintiff Willie Conner is a former Alabama prison inmate, who is proceeding pro se and in forma pauperis.  He filed the instant action alleging violations of 42 U.S.C. § 1983.[1]  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants Sheriff Grover Smith, Captain James Freeman, and Lieutenant Kenneth Brazile's[2] Motion for Summary Judgment, and supporting materials  (Docs. 18, 26, 36), Plaintiff's opposition thereto (Doc. 43), Plaintiff's Motions to Supplement the Record

---

[1]Conner initiated his action on January 24, 2007 by filing a Complaint(Doc. 1); however, because Conner used an outdated complaint form, this Court, on February 7, 2007, ordered Conner to file his complaint on an updated form.  (Doc. 3).  Conner subsequently filed his new Complaint on the proper form on April 2, 2007. (Doc. 6). Pursuant to the Court's Order dated February 7, 2007 Conner's instant Complaint supersedes his original Complaint.

[2]In his Complaint, Conner incorrectly identifies Defendant Kenneth Brazile as "Kenny Brazil."

(Docs. 16, 38), Plaintiff's Opposition to the Answer of the Defendants (Doc. 21), Plaintiff's Opposition to Defendants' Special Report (Doc. 27), and Plaintiff's Declaration under Penalty of Perjury (Doc. 42). After careful consideration of these pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I.  <u>SUMMARY OF ALLEGATIONS</u>

From its review of the record, the Court summarizes below the parties' allegations which are material to the issues addressed in this Report and Recommendation.

While Conner was incarcerated at Escambia County Detention Center, an altercation or fight broke out on July 4, 2006, between several inmates, including brothers Willie McCants and Ashlion McCants, and Shawn Simmons, in the gym area of the Center.  It appears that this initial confrontation arose from a card game that went awry and that Conner attempted to aid inmate Simmons. (Doc. 26, p. 3; Exs. B, E, F, H). Corporal Jane Johnson, who was working in Central Control, was notified by Dispatcher Ellington that there was a fight in the gym area.  Cpl. Johnson called a Signal 5, which indicated that a fight was taking place, at approximately 8:15 p.m. Sergeant John Moncrease and Corrections Officer Norris responded. They entered the gym area and separated the inmates, including

2

brothers Ashlion and Willie McCants, Shawn Simmons, and several other inmates.  Sgt. Moncrese removed inmate Simmons and another inmate from the gym area. (Doc. 26, p. 3; Moncrese Affidavit).

When Sgt. Moncrese returned to the gym area, the McCants brothers were involved in yet another attack, which involved throwing chairs, and appeared to have been directed at Conner. Sgt. Moncrese, C/O Norris, Deputy Leggett and Cpl. Johnson intervened to resolve the conflict. The McCants brothers were removed from the gym area at approximately 10:38 p.m. (Doc. 26, p.3; Exs. C, D).

According to Conner, he was taken to the infirmary, and shortly thereafter, he was ordered to return to the gym area, where he was being housed[3].  Approximately five to ten minutes after Conner was returned to the gym area, Cpl. Johnson and Dispatcher Ellington noticed that the gym lights were turned off. Sgt. Moncrese[4] entered the gym area to turn on the lights and discovered

---

[3]In their affidavits, Sgt. Moncrese and Cpl. Johnson both indicate that Conner asked to be placed back in the gym area. In fact, Sgt. Moncrese asserts that Conner indicated that he "had no problems" with the inmates in the gym.  Additionally, Cpl. Johnson also asserts that Conner  "insisted" that he be returned to the gym. (Doc. 26, Affidavit of John Moncrese and Affidavit of Jane Johnson).

[4]The record references John Moncrese as both Corporal Moncrese and Sergeant Moncrese, which indicates that some time subsequent to the events giving rise to Plaintiff's complaint, he was given the rank of sergeant. However, for the purpose of this report and recommendation, he will be referred to solely as Sgt. Moncrese.

that Conner was involved in yet another fight with fellow inmates[5]. (Doc. 6, p. 8; Doc. 26; Johnson Affidavit; Moncrese Affidavit). According to Conner, this last attack lasted approximately 15 minutes. (Doc. 6, p. 9).

Conner alleges that he was taken to the Infirmary; however, no medical staff was on duty. Thereafter, Sgt. Moncrese called for an ambulance to transport Conner to the hospital. (Docs. 6, 26). Cpl. Johnson indicates that Conner's "face was swollen, and he was bleeding from his nose and head." (Doc. 26, Johnson Affidavit). Additionally, the narrative statement of Correctional Officer Harris indicates that Conner was "staggering and covered in blood... [Officer Harris] saw Conners [sic] had bad cuts and bruises on his face." (Doc. 26, Ex. D).

According to Conner, when he arrived at the hospital emergency room, he was "diagnosed with two broken ribs, and two of [his] teeth were kicked out." He further alleges that he currently suffers from "b[l]urred vision, bad head aches, anxiety attacks and stomach aches. In addition, [he] received a broken nose." (Doc. 6, p. 2).  While at the hospital, x-rays were taken of Conner's body. The radiology report from Dr. John Baehr shows "faint irregular

---

[5]Plaintiff alleges that during the final confrontation, he was attacked by inmates Nicholas Graves, Reco Brooks, Reginald Gribbs, Sharif Bradford, Lamar Hixon, Willie McCants, and Richard McKenzie. (Doc. 6).  However, according to the sworn statements of the correctional officers, Willie McCants was removed along with his brother after the first attack on Plaintiff. (Doc. 26, p. 3; Exs. C, D).

transverse lucency across the tip of the nasal bones suspicious for possible nondisplaced fracture with minor overlying swelling. Multiple metallic particles scattered over the face bilaterally consistent with [gun shot wound]." Additionally, the report indicates that multiple views of Conner's ribs showed no rib fracture. (Doc. 26, Ex. I).

Conner was returned to the jail at approximately 2:25 a.m. and placed in the infirmary. (Doc. 26, Johnson Affidavit). Conner asserts that once back at the jail, he was not given any pain medication for 2 days even after he requested medication. According to Conner, he was thereafter given medication "on the third day ... for two days, and remained in constant pain." (Doc. 6, p. 2). Defendants assert that Conner was seen by the jail nurse the next morning and appeared "beat up[] but had no acute injury"; however, Defendants provide no support for this assertion or any evidence of this nurse's visit. The medical records do, however, reflect that Conner was seen by the jail nurse on July 18, 2006, and that he reported pain and blood in his urine. A medical test was negative for blood in the urine, and during this visit, the nurse removed sutures from Conner's head. (Doc. 26, Ex. J).

## II.  PROCEDURAL ASPECTS OF THE CASE

On January 24, 2007[6], Conner filed the present § 1983 action

---

[6]  As previously noted, Conner originally filed this action on January 24, 2007, but was ordered by this Court to file his Complaint utilizing this Court's updated form. (Docs. 1, 3).

alleging violations of the Eighth and Fourteenth Amendments. Specifically, Conner alleges that Sheriff Smith "created an atmosphere which deprived [him] of the basic human needs" – which Conner describes as proper medical care and sanitation. Conner also contends he was subjected to "increased violence" due to jail overcrowding (Doc. 6, p. 9). Additionally, Conner asserts that the alleged overcrowding has resulted in improper inmate classifications. (Id. at 10). Conner further claims that Captain Freeman and Lieutenant Brazile knew of the risk of danger to him because of the first "assault" but were deliberately indifferent and failed to respond to the threat of violence against him. According to Conner, there were not enough guards to supervise the inmates being housed. (Id. at 9-10). Conner does not indicate the specific relief which he is seeking from Defendants.

In their Answer and Special Report filed on October 16, 2007, and November 1, 2007, respectively, Defendants assert that none of them were present on the night of the alleged attack and that they had no knowledge of any risk of harm to Conner from any inmates, nor were they otherwise "deliberately indifferent" to Conner's health or safety. Defendants further deny that they violated Conner's constitutional rights and assert the defenses of absolute and qualified immunity. (Docs. 18, 26). On April 17, 2008, the Court entered an Order converting Defendants' Special Report and

---

Conner filed his amended complaint on April 2, 2007. (Doc. 6).

Answer to a Motion for Summary Judgment.  (Docs. 36, 37).  On May 13, 2008, and May 14, 2008, Conner filed responses in opposition to Defendants' Motion for Summary Judgment.[7] (Doc. 42, 43).  In his responses, Conner reiterates his claim that Defendants failed to take precautions in light of a "known threat" and failed to provide him reasonable medical care.[8](Doc. 43).  Defendants' motion and Conner's responses thereto are now before the Court.

### III.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[7]Conner also filed a response in opposition to Defendants' Answer on October 26, 2007 (Doc. 21). In his response, Conner states that the "Eleventh Amendment ... does not bar section 1983 suits against state or county officials in their individual capacity for damages or against state and county officials in their official capacity for injunction [sic] relief." Additionally, Conner filed a response in opposition to Defendants' Special Report on November 16, 2007 (Doc. 27), wherein he contests the sworn statements of Cpl. Johnson and Sgt. Moncrese and asserts that he did not request to be taken back to the gym. See footnote 5, supra.  Thus, for the purpose of summary judgment, the Court will assume that Conner did not ask to go back to the gym.

[8]In his response, Conner also advises that although he is no longer in custody, he desires to continue with the prosecution of the action.

issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. <u>DISCUSSION</u>

As noted above, Conner seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of an attack by several other inmates. (Doc. 6). Specifically, Conner alleges that Defendants Freeman and Brazile violated his Eighth and Fourteenth Amendment rights by failing to protect him from the final attack by inmates on July 4, 2006. Plaintiff also asserts that Defendant Smith failed to provide proper medical treatment following the alleged attack and that Smith's actions led to a decrease in sanitation and an increase in violence. Specifically, Conner states that there was an insufficient number of guards to supervise the inmates, that the facility was overcrowded, and that due to insufficient inmate classification, "older vulnerable inmates" are not separated from "younger, stronger and more violent" inmates. (Doc. 6, p. 3). Defendants deny that they violated Conner's constitutional rights and further assert the defenses of absolute and qualified immunity.[9] (Docs. 30, 31, 38,

---

[9]In his Complaint, Conner does not specify whether he is suing Defendants in their official or individual capacities. <u>But see</u> Footnote 8, supra. Therefore, the Court will consider both.

As an Alabama sheriff, Defendant Smith is a state official entitled to absolute immunity from suit for damages in his official capacity. <u>See</u> <u>West v. Tillman</u>, 496 F.3d 1321, 1326 n.7 (11th Cir. 2007) (citing <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1429 (11th Cir. 1997)). This immunity also extends to Defendants Freeman and Brazile who, employed by Sheriff Smith, represent the State in their duties at the Escambia County Detention Center. Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from

43).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other
> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and
> laws, shall be liable to the party injured in
> an action at law, suit in equity, or other
> proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Conner's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989). Although Conner has raised these claims under the Eighth and Fourteenth Amendments, it is the Eighth Amendment that applies here. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and

---

suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to [Conner], show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Having found herein that Conner's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994).

In <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

<u>DeShaney</u>, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Conner must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, <u>Williams v. Bennett</u>, 689 F.2d 1370,

1389-90 (11th Cir. 1982)." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993).

In <u>Sims v. Mashburn</u>, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." <u>LaMarca</u>, 995 F.2d at 1535.  This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." <u>LaMarca</u>, 995 F.2d at 1535 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983-84 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain

implicates the Eighth Amendment.'"    _Farmer_, 511 U.S. at 834

(quoting _Wilson_, 501 U.S. at 297).

In prison condition cases, the required state of mind for a

defendant is "deliberate indifference" to an inmate's health or

safety.    _Id._ (citations omitted).    In defining "deliberate

indifference," the Supreme Court in _Farmer_ stated:

> We hold . . . that a prison official cannot be
> found liable under the Eighth Amendment for
> denying an inmate humane conditions of
> confinement unless the official knows of and
> disregards an excessive risk to inmate health
> or safety; the official must both be aware of
> facts from which the inference could be drawn
> that a substantial risk of serious harm
> exists, and he must also draw the inference.

_Farmer_, 511 U.S. at 837.    The Supreme Court concluded that the

"subjective recklessness" standard of criminal law is the test for

"deliberate indifference" under the Eighth Amendment.    _Id._ at 839-

40.    There is no liability for "an official's failure to alleviate

a significant risk that he should have perceived but did not. . .

."    _Farmer_, 511 U.S. at 838.    It is not enough that a plaintiff

proves that the defendant should have known of the risk, but did

not, as actual subjective knowledge is the key.    _See_, _e.g._,

_Cottrell v. Caldwell_, 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to

ensure "reasonable safety," a standard that incorporates due regard

for prison officials' "unenviable task of keeping dangerous men in

safe custody under humane conditions."    _Farmer_, 511 U.S. at 844-45

(citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

Finally, Conner must establish an affirmative causal connection between the Defendants' actions, orders, customs, policies, or breaches of statutory duty and a deprivation of his constitutional rights in order to state a claim upon which relief may be granted. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation; by proving that a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights; or by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Conner's constitutional injury. Id.

Having set forth the general legal principles relevant to Conner's claims, the Court now turns to the application of those legal principles to the facts before the Court.

A.   Failure to Protect & Prison Conditions.

In his Complaint, Conner alleges that Defendant Smith violated his Eighth Amendment right to be free from cruel and unusual punishment by maintaining an "atmosphere" in the Detention Center whereby medical care was lacking, and poor sanitation led to

increased violence. According to Conner, the prison was understaffed and overcrowded, and this in turn resulted in insufficient inmate classification. In addition, Conner argues that Defendants Freeman and Brazile acted "unreasonably" and were deliberately indifferent after they failed to protect him from a known danger following the first altercation in the gym area on July 4, 2006, where he, and the others involved in the fight were located.[10] (Doc. 6 at 9). Defendants assert that none of the Defendants were present in the gym during the occasions on which Conner was assaulted.

The record evidence shows that, on July 4, 2006, the McCants brothers were involved in the first fight of the evening, with inmate Simmons. Conner sought to come to the aid of inmate Simmons. (Doc. 26, Ex. H). Sgt. Moncrese and Officer Norris intervened in that fight and caused inmate Simmons to be removed from the gym area. When the correctional officers returned to the gym area, they discovered the second fight of the evening ensuing. This fight entailed Conner being attacked by at least one of the McCants brothers. (Doc. 26, Ex. H). At that point, both McCants brothers were removed from the gym area, and Conner was taken to the infirmary, apparently with minor injuries. (Doc. 26, p. 3). Conner was returned to the gym a short time after. (Id.; Doc. 6). Not long after Conner's return to the gym area, a third fight

---

[10]Conner asserts that this area is overcrowded. (Doc. 6).

ensued. On this occasion, someone had turned off the lights in the gym area, and Conner was attacked in the midst. Correctional officers went to the gym area to investigate why the lights were turned off and discovered Conner being beaten. (<u>Id.</u>)

With respect to the objective element of Conner's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him. <u>Farmer</u>, 511 U.S. at 834.  It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. . . ." <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) ("[C]onfinement in a prison where violence and terror reign is actionable.").  On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment."  <u>Purcell</u>, 400 F.3d at 1320 (citations omitted) (granting summary judgment for sheriff and jail administrator where Plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and that there was a history of isolated, inmate-on-inmate fights).

"[A] prison custodian is not the guarantor of a prisoner's

safety." Purcell, 400 F.3d at 1321 (citations omitted).  "[N]ot .
. . . every injury suffered by one prisoner at the hands of another
. . . translates into constitutional liability for prison officials
responsible for the victim's safety."  Farmer, 511 U.S. at 834.
As discussed above, a prison official's duty under the Eighth
Amendment is to ensure "reasonable safety."  Farmer, 511 U.S. at
844.

Other than his conclusory allegations, Conner has failed to
present any evidence that the detention center was overcrowded or
understaffed at the time of his attack.  He has also failed to
provide evidence that the present system of inmate classification
is improper.  However, even assuming that Conner's allegations are
true, he has failed to demonstrate evidence of other acts of
inmate-on-inmate violence, whether resulting from overcrowding,
understaffing[11], improper classification, or otherwise.  He has also
failed to point to evidence of any other conditions at the prison

---

[11]The evidence reflects that at least 2 correctional
officers broke up the initial fight involving the McCants
brothers and inmate Simmons. Simmons and another inmate were then
removed from the gym. After the second fight, it appears that
four officers, Sgt. Moncrese, C/O Norris, Deputy Leggett, and
Cpl. Johnson intervened to resolve the situation, and the inmates
were separated and locked down (Doc.26, Ex. B, C; Johnson
Affidavit; Moncrese Affidavit). The McCants brothers were then
removed from the gym area and placed in Assembly, and Conner was
taken to the infirmary. (Id.)  Conner asserts that he was
assaulted after being returned to the gym, and that this attack
lasted 15 minutes. Conner admits, however, that once he knocked
on a window in order to alert officials, officers responded in 3-
5 minutes. (Doc 6, p. 9).

that exposed him to "the constant threat of violence" while incarcerated at the Escambia County Detention Center, see Purcell, 400 F.3d at 1320, or that actually posed "a substantial risk of serious harm" to him.     Farmer, 511 U.S. at 834; cf. Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly when the jail was overcrowded, as it was during May 1990 and the two preceding years.  Moreover, the evidence indicated that the violence was severe enough to require medical attention and even hospitalization on occasion.").  While it true that Conner was involved in two previous altercations that same night, each fight appeared to stem from same isolated incident.  As observed previously, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." Purcell, 400 F.3d at 1320. Conner asserts only that Defendants should have known "of the risk [] because of the first assault by multiple inmates."  However, there is absolutely no evidence that the third attack, which occurred after the main perpetrators of the initial fight, the McCants brothers and Simmons, were removed from the gym area, was part of a "constant threat of violence against [Conner]." In other words, the record is devoid of any evidence that having removed the main perpetrators from the gym area, Defendants should have anticipated the final attack on Conner.   Against this backdrop of facts, Conner has failed to establish that the

conditions under which he was incarcerated subjected him to "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834. Accordingly, Conner has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming *arguendo* that Conner's evidence did satisfy the objective element of his Eighth Amendment claim, he must also come forth with sufficient proof that Defendants were subjectively, deliberately indifferent to the risk of serious harm to him.  To meet this element, Conner must prove that Defendants actually knew that a substantial risk of serious harm existed, and that they "knowingly or recklessly" declined to take action to prevent that harm. <u>LaMarca</u>, 995 F.2d at 1535.  "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838.  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" <u>Hale</u>, 50 F.3d at 1583 (quoting <u>Farmer</u>, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842).

In this case, Conner alleges that he was attacked as a result of interjecting himself into an altercation between the McCants

brothers and Shawn Simmons over a card game. As previously indicated, following the initial fight, Simmons and another inmate were removed from the gym area. A second fight ensued but was quickly resolved. Conner was temporarily relocated to the infirmary, while the McCants brothers were removed from the gym area. A short while later, Conner was returned to the gym area. Conner indicates that he did not ask to be returned to the gym area, however, he does not allege that he requested *not* to be returned to the gym or that he sought to be placed in protective custody or segregation. Conner also does not allege that he notified Defendants that he would be subjected to any harm if returned to the gym area. In fact, given that the instigators of the fight, the McCants brothers and inmate Simmons, had all been removed from the gym area, it appears that prison officials were actively attempting to quell any possible tension among those remaining in the gym area.

Under the circumstances presented, Conner has failed to proffer any evidence that Defendants were deliberately indifferent to the risk of harm to him from any other inmates. There is no evidence that Conner, or any of the Defendants, were aware of a specific or general risk of an inmate attack that evening, let alone repeat inmate attacks. Additionally, there is no evidence that any threats had ever been directed at Conner by the McCants brother or any other inmate. Nor is there any evidence that

20

Defendants were made aware of any such threats. The bottom line is that the record is devoid of any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past". <u>Farmer</u>, 511 U.S. at 842. Rather, the evidence reflects that the July 4th attacks on Conner were isolated and appear to have arisen from a card game. Additionally, no one, including Conner, had any reason to suspect that he was in danger of being attacked on July 4th. Accordingly, the undersigned finds that Conner has failed to proffer facts from which a jury could reasonably find that these Defendants knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent a known harm. <u>LaMarca</u>, 995 F.2d at 1535.

Finally, with respect to Defendants Smith and Freeman, Smith serves as sheriff of Escambia County, while Captain Freeman supervises the operations of the Escambia County Detention Center.[12] (Doc. 26). While Conner has not asserted that he is suing Cpt. Freeman based on his supervisory position at the prison, to the extent Conner's allegations against these defendants relate to supervisory liability, the law is clear that a supervisor may not be held liable in a § 1983 action based solely on the acts of his

---

[12]The narrative statements of Correctional Officer Harris, Sgt. Moncrese, and Cpl. Johnson (Doc. 26, Exs. B, C, D) were all addressed to Captain Freeman and Captain Payne. Cpt. Payne is not a party to this lawsuit. In addition, the Inmate Request Forms submitted by Conner were answered by Cpt. Freeman. (<u>See</u> Doc. 38).

employee.   See Fundiller v. City of Cooper City, 777 F.2d 1436,
1443 (11th Cir. 1985) (comparing the position of a supervisor to a
municipality which may have liability imposed through its customs
or policies, but not through employees' actions).   "Instead,
supervisory liability under § 1983 occurs either when the
supervisor personally participates in the alleged unconstitutional
conduct or when there is a causal connection between the actions of
a supervising official and the alleged constitutional deprivation."
Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).[13]

    "The necessary causal connection can be established 'when a
history of widespread abuse puts the responsible supervisor on

_____

    [13]Defendant Brazile works as an investigator in the Escambia
County Detention Center, and his duties have nothing to do with
the guarding or the supervising of inmates in the jail. (Doc. 26;
Brazile Affidavit). Proof of an affirmative causal connection
between the official's acts or omissions and the alleged
constitutional deprivation is required in § 1983 cases. "'[I]t is
clear that the inquiry into causation must be a directed one,
focusing on the duties and responsibilities of each of the
individual defendants whose acts or omissions are alleged to have
resulted in a constitutional deprivation ... Evidence that an
individual defendant had neither the authority nor the resources
to prevent the deprivation is material to [the causation
analysis].'" Rodriquez v. Sec'y for the Dep't of Corr., 508 F.3d
611, 625 (11th cir. 2007) (quoting Williams v. Bennett, 689 F.2d
1370, 1375, 1381 (11th Cir. 1982)). Conner does not dispute that
Brazile was not even present in the jail at the time of his
attack. Conner has provided no evidence indicating that the
attack was the proximate result of any action taken by Defendant
Brazile in his job as investigator. Conner has not alleged that
Defendant Brazile is a supervisor, nor has he set forth any facts
in support of his claim that Brazile was deliberately indifferent
to Conner's needs. Accordingly, with respect to Defendant
Brazile, the Court finds that Conner has failed to establish the
required causal connection. Thus, his § 1983 claim against
Defendant Brazile fails as a matter of law.

notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted). In addition, a causal connection may be established by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Conner's constitutional injury. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).[14] Conner has presented no such evidence in this case. Accordingly, the Court finds Conner's evidence insufficient to establish the subjective element of his Eighth Amendment claim.

Accordingly, having found Conner's evidence insufficient for a jury to reasonably find that Defendants knew of a substantial risk of harm to Conner, that Defendants were deliberately

---

[14]In addition, Conner has not presented any evidence that the attack was the proximate result of any policy, custom, order, or breach of a statutory duty held by Sheriff Smith. The evidence reflects that the attack was isolated, and was not anticipated by Conner or any of the Defendants. Because Conner has presented no evidence that he was being confined in a prison ""where violence and terror reign[ed]" and where inmate-on-inmate violence abounded, the Court finds Conner's evidence insufficient to satisfy the causation element of his Eighth Amendment claim. Purcell, 400 F.3d at 1320.

indifferent to that risk, and that Defendants' conduct caused the deprivation of Conner's constitutional rights, Defendants are entitled to judgment as a matter of law on Conner's Eighth Amendment prison condition and failure to protect claims.

    B.   <u>Failure to Provide Adequate Medical Care</u>.

    Next, Conner claims that Defendant Smith violated his rights under the Eighth Amendment by failing to provide proper medical treatment to him after he was attacked. According to Conner, after he was attacked the final time, he was taken to the infirmary, but there were no medical personnel on duty. He alleges that he reported to Sgt. Moncrese that he "was in a great deal of pain [] and had trouble breathing." He indicates that Sgt. Moncrese stated that he was trying to contact another official. Conner submitted the same complaints to Officer Jernigan and was taken to the hospital after an ambulance was summoned. (Doc. 6, p. 9). Conner states that, at the hospital emergency room, he was diagnosed with two broken ribs and the loss of two teeth. Conner also asserts that he suffers from "b[l]urred vision, bad head aches, anxiety attacks and stomach aches," in addition to a broken nose. (Doc. 6 at 9). He further alleges upon his return to the jail, he requested pain medication for two days and remained in constant pain until he was finally given medication on the third day. (<u>Id.</u>)

    The record reflects that immediately following the attack, an ambulance was called and Conner was taken to the emergency room. A

review of Conner's medical records shows x-rays were taken of his body and that the radiology report showed "faint irregular transverse lucency across the tip of the nasal bones suspicious for possible nondisplaced fracture with minor overlying swelling. Multiple metallic particles scattered over the face bilaterally consistent with [gun shot wound]," but no rib fracture. (Doc. 26, Ex. I).

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a Conner first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth

Amendment denial of medical care claim, Conner must further demonstrate "deliberate indifference" to a serious medical need. <u>Farrow</u>, 320 F.3d at 1243.

> In <u>Estelle</u>, the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

As best the Court can discern, Conner's complaint regarding his medical care involves the two day period he was allegedly denied or delayed in receiving pain medication after he was discharged from the emergency room. Where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. See <u>Hill</u>, 40

F.3d at 1188.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed."  Id. (emphasis added).

Although Conner has provided no evidence that demonstrates that he suffered a significant effect as a result of the two day denial of his request for pain medication, for purposes of this analysis, the Court assumes, without deciding, that Conner has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim. Therefore, the Court turns to the second, subjective element of Conner's claim, that is, whether Defendants were deliberately indifferent to Conner's serious medical need.

Although Conner does not actually allege that Defendants were "deliberately indifferent" to his serious medical needs, this Court, construing Conner's vaguely pled Complaint liberally, will assume that the gist of Conner's allegation is that Defendants were "deliberately indifferent" to his medical needs.  Conner's claim is not borne out by the record.

In order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Conner's health.  Farrow, 320 F.3d at 1245.  As previously noted, Conner's complaint of inadequate medical care focuses on the two day period following the July 4th attacks when Conner contends he requested and

27

was denied pain medication. The evidence demonstrates that Conner was immediately taken to the prison infirmary and then to the hospital emergency room following his final altercation with the other inmates. While Conner alleges that he was diagnosed with broken ribs, the medical evidence does not support this contention. The x-rays taken at the emergency room, mere hours after the incident, revealed no fractures or other abnormalities resulting from the assault. Moreover, in "Inmate Request Forms" submitted by Conner in opposition to Defendants' Motion for Summary Judgment, Conner asserts that upon leaving the emergency room, he was given "3 or 4 Lortab" and "3 or 4 Darvocet." (Doc. 38). Accordingly, while Plaintiff may not feel that he was provided with adequate pain medication, the evidence is unrefuted that upon leaving the emergency room, Conner was provided medication that is commonly prescribed for the treatment of pain. Moreover, the records reflect that Conner was housed in the infirmary following his return from the emergency room, and that he was seen by the jail nurse on July 18, 2006, after he reported pain and blood in his urine. A medical test was negative for blood in the urine, and during this visit, the nurse removed sutures from Conner's head. (Doc. 26, Ex. J). The fact that Plaintiff may disagree with the medical care provided him is not sufficient to establish a constitutional violation.

Additionally, while it might be argued that Defendants were

negligent in administering pain medication to Conner, mere negligence is not sufficient to support a constitutional claim. See Mandel v. Doe, 888 F. 2d 783, 787-88 (11th Cir. 1989) (solely showing negligence or medical malpractice "not sufficient" to constitute deliberate indifference). Conner has not proffered any probative evidence which suggests deliberate indifference on the part of Defendants or that the medical care he received was inadequate. Moreover, Conner has not submitted any "verifying medical evidence" showing that the alleged delay in medical treatment resulted in the diminishment of his physical or mental health. Hill, 40 F.3d at 1188. The absence of such evidence further undermines a finding that Defendants were deliberately indifferent to Conner's serious medical needs.

While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show such. The record reflects that Conner was promptly taken to the emergency room and given medical care on July 4, 2006, and that he was housed in the prison infirmary until at least July 19, 2006.

> "When a prison inmate has received medical
> care, courts hesitate to find an Eighth
> Amendment violation." Waldrop v. Evans, 871
> F.2d 1030, 1035 (11th Cir. 1989). "[D]elay
> in medical treatment must be interpreted in
> the context of the seriousness of the medical
> need, deciding whether the delay worsened the

> medical condition, and considering the reason
> for delay." <u>Hill</u>, 40 F.3d at 1189.

<u>Id.</u>

Considering all of the circumstances surrounding the treatment that Conner received after the July 4th attacks, along with Conner's vague and conclusory allegations, the undersigned finds that Conner has not presented facts which suggest that Defendants were deliberately indifferent to Conner's medical needs. Thus, Conner has failed to establish the subjective element of his denial of medical care claim.

Against this backdrop of facts, Conner has failed to show that Defendants knew of and disregarded an "objectively serious medical need" following Conner's July 4th altercations. To the contrary, the evidence reflects that prison staff responded to every medical need presented, and that Conner suffered no detrimental effect from any alleged delay in providing pain medication. Because Conner has failed to establish both the objective and subjective elements of his Eighth Amendment medical care claim, Defendants are entitled to judgment as a matter of law.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the undersigned concludes that Defendants Sheriff Grover Smith, Captain James Freeman, and Lieutenant Kenneth Brazile are entitled to summary judgment in their favor on all claims asserted against them by Conner. Accordingly, it is recommended that Defendants' motion for summary

judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff Willie Conner on all claims.

The attached sheet contains important information regarding objections to this recommendation.[15]

DONE this **2nd** day of **July, 2009.**

          **/s/ SONJA F. BIVINS**
        **UNITED STATES MAGISTRATE JUDGE**

---

[15]In light of the instant report and recommendation, Conner's Motion for Appointment of Counsel (Doc. 51) is **DENIED.**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a <u>de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)( c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                    /S/ SONJA F. BIVINS
               **UNITED STATES MAGISTRATE JUDGE**